JOHN C. BEATTY et als. *v.* ANTOINE MICHON.

The plaintiffs claimed several parcels of land, some of them by virtue of patents, others by virtue of entries for which patents had not issued. The defendant claimed the same land under certificates of confirmations by the Register and Receiver of the Land Office, embraced in their reports, confirmed by Acts of Congress anterior to the dates of the patents and entries. The plaintiffs contended that the boundaries of the defendant's claims were vague and uncertain, and required to be fixed by official surveys to complete the title to any land whatever. *Held :* The confirmations which conflict with the plaintiffs' patents and entries, were susceptible of a precise and definite location by reference to the previous surveys which were on file in the Register's office. From them it appeared that the lands entered by the defendant were necessarily embraced within the boundary of the confirmations—and such being the case, the Acts of Congress confirming the claims reported on favorably by the commissioners, are equivalent to patents. It was the duty of the government to cause resurveys to be made, so as to seperate the private claims of defendant from the rest of the land embraced in the township. The failure to do so could not prejudice the defendant nor the plaintiffs under subsequent entries.

When confirmations correspond substantially with the description of the land in the certificates of confirmation, it must be presumed that the confirmations were made in reference to them.

A party who enters land subsequent to the confirmation of the claim of another to it, is entitled to no other notice than that which the government should give by causing the confirmed claims to be truly entered on the township map.

**A**PPEAL from the District Court of the Parish of Lafourche Interior, *Randall,* J. *J. C. & A. Beatty,* for plaintiffs and appellants:

1st. When the boundaries of a confirmed claim are vague and uncertain, and are to be fixed by the operations of the surveying department and before the survey or location, the government sells a part of the land not necessarily embraced within the tract confirmed, the title of the purchaser will prevail. *Lott* v. *Proudhomme,* 3 Rob. 295. *Fahey* v. *Anderson,* 6 Ann. 681.

2d. It is not shown that the plots offered in evidence in this case were offered before the Commissioners, or that the confirmation was made in reference to these plots. See *Slack* v. *Orillon,* 13 La. R. 57.

3d. If the confirmation was made according to the act offered in evidence, and they were properly located by the survey of November 22, 1848, yet as these plans and the former survey are not shown to have been returned to the proper office, and recorded so as to give notice, they are not binding on third parties. *Baldwin* v. *Stafford,* 10 Mar. 418. Commissioner of Land Office has no authority to vacate patents already issued. 3 R. 295.

*Winchester Hall,* for defendant, cited *Marsh & Miller* v. *Gonsinlier,* 16 La. 89. *Kittridge* v. *Braud,* 2 Rob. 40.

OGDEN, J. This case presents a conflict of titles to several parcels of land, claimed by the plaintiffs by virtue of three patents from the United States,

dated July 3d, 1848, and certain entries made, for which patents have not issued, dated 26th January, 1849, and claimed by the defendant, under three certificates of confirmation by the Register and Receiver of the Land Office, embraced in their reports, confirmed by Acts of Congress, bearing date 3d of March, 1835, and 4th July, 1836.

The titles of defendant being anterior in date to those of the plaintiffs, the only question is, whether the boundaries were so defined in the confirmations and accompanying plots of survey, as to separate the land embraced in them from the public domain. If so, the Acts of Congress, confirming the claims reported on favorably by the Commissioners, are equivalent to patents, and the entries made by the plaintiffs, in consequence of the neglect or failure of the agents of the government to mark these private claims on the township map, conferred no valid title.

The plaintiffs contend that the boundaries of these confirmed claims of defendant, are vague and uncertain, and required to be fixed by official surveys before titles to any specific and definite quantity of land could be considered as derived under them ; and they rely on the cases of Lott v. Prudhomme, 3 Rob. 295, and Fahey v. Anderson, 6 Ann. 681, as settling the principles which ought to govern this case. It is true that in the present case, as in both of the cases above referred to, there is a vagueness and uncertainty in the boundaries as set forth in the confirmation, but there is a material difference in this respect; in neither of those cases does it appear that there was any plot accompanying the confirmation, nor had there been any survey or location of the confirmations made until subsequent to the entries made by the adverse claimants. In the present case, the titles under which the defendant claims, had been located previous to the confirmations, and the confirmations were made in reference to these previous surveys. We do not understand the decisions in either of those cases, as affirming that where a previous survey of the land has been made, it is necessary for the validity of a title by confirmation, that it should again be surveyed under the authority of the government. Such a survey is always ordered and made by the government to prevent a conflict between the confirmed claim and the public domain remaining subject to sale, but has never been supposed to be necessary to complete the title under a confirmation, except where the title has been confirmed as a floating claim, and so the court must have regarded the confirmation in the cases above cited, in order to arrive at the conclusion to which they came.

In the case of Fahey v. Anderson, the certificate of confirmation mentioned that the land was to have such form and marks, natural and artificial, as should be represented in a plot thereof, to be returned by the principal deputy surveyor; and the Act of Congress expressly required that the claimant should cause to be made at his expense, under the direction of the Surveyor General, the survey mentioned in the certificate. The court say : "As neither the plaintiff nor their author appear to have taken any steps after the confirmation to perfect their title, the defendant's vendor could not, by the use of reasonable diligence, have ascertained the location of their claims;" and it was held, the United States had the right, under these circumstances, to sell any portion of land not necessarily embraced within the boundaries of the tract confirmed. The features of this case, as presented by the evidence, are essentially different.

The two confirmations which conflict with the plaintiff's patents and entries, were susceptible of a precise and definite location, by reference to the previous surveys which were on file in the Register's office. The bearings and distances were established by these surveys, and there were natural objects referred to, which showed that the lands entered by the plaintiffs were necessarily embraced within the boundaries of the confirmations. Under those circumstances, it was the duty of the government to cause the resurveys to be made so as to separate the private claims of defendant from the rest of the land embraced in the township. It further appears from the evidence, that on the 5th of February, 1848, the defendant addressed a letter to the Surveyor General, enclosing his confirmation, and asking for an order of survey; that he repeated this request by a subsequent letter, and that on the 17th of March, an order of survey issued, which might have been executed, but for the neglect of the deputy surveyor, before the entries could have been made by the plaintiffs. The surveys were made afterwards, on the 22d of November, 1848, and approved by the Surveyor General, on the 9th of January, 1849. If the confirmations of the defendant could be regarded as mere floating claims, the location of them by the government, notwithstanding the neglect of its officers and agents to perform their duty, would have been a completion of the title, too late, to prevail over the purchases from the government made by the plaintiffs; but we are of opinion they cannot be so regarded; that the defendant having done all it was in his power to do, cannot be made to suffer, from the fact that the township map was made out and returned by the Surveyor General, without any notice of his claim.

It is contended by the plaintiffs that it is not shown that the plots, offered in evidence, were offered before the commissioners, or that the confirmation was made in reference to these plots. We think that as they were on file in the office of the commissioners, and correspond substantially with the descriptions of the land in the certificates of confirmation, it must be presumed that the confirmations were made in reference to them. The notice filed by the claimant described the land by reference to one of the surveys and by natural objects, which figure on the other plot. We do not think the plaintiffs who acquired title subsequent to the confirmations, were entitled to any other notice than that which the government should have given them by causing defendant's private claims to be truly represented on the township map.

We think the defendant has shown a superior title to the land in dispute.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be reversed, and that there be judgment in favor of the defendant, quieting him in his title to the land embraced in the three surveys offered by the Surveyor General, on the 9th January, 1849, and that the plaintiffs pay costs in both courts.